UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OXFAM AMERICA, INC.,

    Plaintiff,

v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Defendant.

Civil Action No. 12-cv-10878-DJC

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Defendant, the Securities and Exchange Commission ("SEC"), does not dispute the one material fact that entitles the Plaintiff, Oxfam America, Inc. ("Oxfam"), to relief in this case: that it has missed the statutory deadline to adopt final rules implementing Section 1504 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78m, *et seq.* ("Dodd-Frank"). The Administrative Procedure Act ("APA") provides "that a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The SEC's failure to meet a statutory rulemaking deadline constitutes agency action "unlawfully withheld." Accordingly, Section 706(1) of the APA entitles Oxfam to summary judgment and an order compelling the SEC to adopt such final rules.

### BACKGROUND

To ameliorate the ongoing financial crisis, and to prevent a recurrence of the practices that caused it, Congress passed, and on July 21, 2010 President Obama signed, the Dodd-Frank Act. By most accounts, Dodd-Frank is the most important financial

reform since the Great Depression.  Section 1504 is a key provision.  It requires oil and mining companies to disclose the payments they make to foreign governments.

The disclosure rule mandated by Section 1504 is designed to protect investors like Oxfam who invest in oil and mining companies -- investments uniquely susceptible to geopolitical risks.[1]  It is also designed to address the "resource curse" that plagues many developing economies dependent on resource extraction.  The "curse" refers to the paradox that many resource-rich countries that should be well-off actually experience lower growth and far greater poverty than their resource-poor countries.  *See* 155 Cong. Rec. S9746 (daily ed. September 23, 2009) (Exhibit 1); Michael Ross, Oxfam America, Extractive Sectors and the Poor (2001) (Exhibit 2) at 16.[2]

Finally, Section 1504 expresses Congress's aim to have the United States set the "global standard" for transparency and disclosure in the field of extractive industry payments.  *See* 156 Cong. Rec. S3316 (daily ed. May 6, 2010) (Exhibit 3).  As the SEC acknowledges, other jurisdictions, including the European Union, are currently considering extractive industry payment disclosure requirements of their own.  (SEC Answer (Docket No. 10), ¶ 20).  They may defer to the United States if the SEC soon implements the required rule, but they will not wait forever and may adopt rules of their

---

[1] Oxfam's Complaint asserts standing based on the deprivation of information to which Oxfam is entitled, its rights as an active investor in companies that will be regulated under Section 1504, and the diversion of its resources to compel the SEC to implement the disclosure rule required by Section 1504. *See* Complaint (Docket No. 1), ¶¶ 7-10, 32-38.  The SEC does not challenge Oxfam's standing in its Answer (Docket No. 10).  Indeed, as a socially responsible investor -- whom Senator Lugar, in introducing the legislative amendment that became Section 1504, singled out as the type of investor who would be particularly interested in the information disclosed under Section 1504's final rule -- and as an organization that would rely upon information disclosed in its mission to promote transparency and accountability in the management of extractive resource revenues around the world, Oxfam is doubly injured by the SEC's failure to respect the deadline mandated by Section 1504.  *See* 155 Cong. Rec. S9746 (daily ed. September 23, 2009) (Exhibit 1), *infra*.

[2] Exhibits referenced herein are attached to the Affidavit of Derek B. Domian in Support of Plaintiff's Motion for Summary Judgment.

2

own incongruent with the rule eventually adopted by the SEC if the SEC continues to violate Section 1504's deadline. This would not be simply a failure in global leadership. As Senators Lugar and Cardin wrote to the Interim Inspector General of the SEC, "SEC delay may… burden United States companies with greater compliance costs if European Union rules that are currently being developed do not match those in the U.S." *See* June 27, 2012 Letter (Exhibit 4).

Section 1504 cannot achieve these goals until the SEC issues implementing rules. Given the importance of Section 1504, Congress mandated that the SEC "shall" issue such rules within 270 days of the law's enactment. As of the date of this motion, the SEC has missed that statutory deadline by sixteen months.

## UNDISPUTED MATERIAL FACTS

A. <u>The SEC Was Statutorily Required to Adopt a Final Disclosure Rule by April 17, 2011</u>

Section 1504 of Dodd-Frank amends Section 13 of the Securities Exchange Act of 1934 to require "resource extraction issuers" -- *i.e.*, publicly traded oil, gas, and mining companies -- to disclose payments made to foreign governments or to the United States government for the purpose of the commercial development of oil, natural gas, or minerals. *See* 15 U.S.C. § 78m(q)(2)(A). This disclosure must be made in annual public reports filed with the SEC.

Section 1504 requires the SEC to promulgate a final rule implementing the new disclosure requirements. Specifically, Section 1504 requires that:

> **Not later than 270 days after the date of enactment** of the Dodd-Frank Wall Street Reform and Consumer Protection Act, **the Commission shall issue final rules** that require each resource extraction issuer to include in an annual report of the resource extraction issuer information relating to any payment made by the resource extraction issuer, a subsidiary of the

resource extraction issuer, or an entity under the control of the resource extraction issuer to a foreign government or the Federal Government for the purpose of the commercial development of oil, natural gas, or minerals…

15 U.S.C. § 78m(q)(2)(A) (emphasis provided).

Dodd-Frank became law on July 21, 2010.[3] The SEC's statutory deadline for promulgating a final disclosure rule expired on April 17, 2011.

B. The SEC Has Failed to Adopt a Final Disclosure Rule

To date, the SEC has not promulgated a final disclosure rule. Thus, the SEC has been in violation of the statutory deadline for sixteen months.

On multiple occasions, the SEC has publicly expressed its intent to adopt final rules implementing Section 1504 within a specific timeframe. On each of those occasions, however, it has failed to do so.[4] After this action was filed, the SEC scheduled a vote for the adoption of final rules for August 22, 2012. Yet the SEC's extended failure to meet the deadline imposed by Congress or its own deadlines leaves no assurances that it will adopt a final disclosure rule on that date.

**SUMMARY JUDGMENT STANDARD**

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and responses to requests for admissions under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no dispute that the SEC has failed to comply with Section 1504's statutory deadline for issuing a final disclosure rule. Section 706(1) of the APA provides a remedy to "compel

---

[3] A copy of Dodd-Frank is attached as "Exhibit A" to Oxfam's Complaint (Docket No. 1).
[4] In the Complaint, Oxfam mistakenly alleged that the SEC initially projected the release of a final rule in the April-July 2010 timeframe. (Complaint, ¶ 23). The SEC correctly denied the allegation. It is undisputed that the actual initial projection date was April-July 2011.

4

agency action unlawfully withheld or unreasonably delayed." Oxfam is entitled to this remedy.

## ARGUMENT

I. **AN ORDER COMPELLING THE SEC TO ACT IS REQUIRED UNDER SECTION 706(1) OF THE APA**

Section 1504 required the SEC to adopt final rules on or before April 17, 2011. 15 U.S.C. 78(m)(q)(2)(A). The SEC did not adopt final rules by that date, and has yet to adopt such rules. The SEC does not dispute this failure. Section 706(1) of the APA -- and the weight of authority in this Circuit and elsewhere -- require an order compelling the SEC to adopt the statutorily mandated rules.

### A. **Section 706(1) of the APA Requires this Court to Compel Agency Action Unlawfully Withheld**

Section 706(1) of the APA provides that the "reviewing court *shall* compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (emphasis provided). Section 706(1)'s use of the word "shall" places a mandatory duty on this Court, just as Section 1504's use of the word "shall" places a mandatory duty on the SEC. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress used 'shall' to impose discretionless obligations."); *United States v. Green*, 407 F.3d 434, 443 (1st Cir. 2005) ("All of these provisions employ mandatory language directing that particular rules of procedure 'shall' be followed. This refutes any notion that Congress intended the district courts to retain discretion to disregard any or all of the prescribed rules."); *Glazer Construction Corp. v. U.S.*, 50 F. Supp. 2d 85, 93 (D. Mass. 1999) ("Considerable authority suggests that when a statute uses the word 'shall', Congress has imposed a mandatory duty upon the subject of the command.") (citing *United States v. Monsanto*,

491 U.S 600, 607 (1989)). Under Section 706(1), therefore, this Court has a mandatory duty to compel agency action that the SEC has unlawfully withheld. *See Tang v. Chertoff*, 493 F. Supp. 2d 148, 154 (D. Mass. 2007) ("5 U.S.C. § 706(1) *requires* that reviewing courts 'compel agency action unlawfully withheld or unreasonably delayed.'") (emphasis provided); *Forest Guardians v. Babbit*, 174 F.3d 1178, 1187 (10th Cir. 1999) ("Through § 706 Congress has stated unequivocally that courts *must* compel agency action unlawfully withheld or unreasonably delayed.") (emphasis provided).

The SEC's failure to take the discrete, discretionless act required by Section 1504 of Dodd-Frank is precisely the type of agency failure that Section 706(1) is meant to remedy. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (Section 706(1) compels agencies to "take a *discrete* agency action that it is *required to take*.") (emphasis in original). Section 1504 imposed a mandatory deadline for adopting a final disclosure rule ("*not later* than 270 days… the Commission *shall issue* final rules…").[5] Whereas the content of the final rule may implicate the SEC's discretionary function, the act that Section 1504 makes imperative -- promulgate a rule by April 17, 2011 -- does not. The SEC had a clear rulemaking deadline, and it failed to meet it. This Court must compel the SEC to act. *See Forest Guardians*, 174 F.3d at 1190 ("when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline,

---

[5] Within Dodd-Frank, Congress distinguished between "mandatory" and "discretionary" rulemaking provisions. Mandatory rulemaking provisions, like Section 1504, are provisions that "require agencies to issue certain rules" and Congress identified these provisions by stating that the "agency or agencies 'shall' establish, promulgate, or issue rules or regulations on a particular topic." *See* Congressional Research Service, *Rulemaking Requirements and Authorities in the Dodd-Frank Wall Street Reform and Consumer Protection Act* (November 3, 2010) (Exhibit 5), *infra*, Appendix A. Discretionary rulemaking provisions are provisions that "permit, but do not require, agencies to issue certain rules" and Congress identified these provisions by stating that the "agency or agencies 'may' establish, promulgate, or issue rules or regulations on a particular topic." *See id.*, Appendix B.

it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.").

Almost every court to consider the issue has determined that when an agency violates a statutory deadline, the agency has "unlawfully withheld" action, and the court must grant relief. *See, e.g., Forest Guardians*, 174 F.3d at 1191 (10th Cir. 1999); *Biodiversity Legal Found. v. Badgley*, No. 98-1093-KI, 1999 U.S. Dist. LEXIS 17806 at *20 (D. Or. Nov. 17, 1999), aff'd, 309 F.3d 1166 (9th Cir. 2002).[6] Courts in the First Circuit have not had occasion to compel agency action under the "unlawfully withheld" prong of Section 706(1), but they have recognized Section 706(1)'s "clearly mandatory" language and have enforced that language to compel agency action "unreasonably delayed." *See Tang v. Chertoff*, 493 F. Supp. 2d 148, 155 (D. Mass. 2007); *Abdi v. Chertoff*, 589 F. Supp. 2d 120, 121 (D. Mass. 2008). Indeed, the *Tang* Court acknowledged that agency violation of a "fixed deadline" in a separate statute would be an obvious example of "unlawfully withheld" action under Section 706(1). 493 F. Supp. 2d at 155.

The "unreasonably delayed" analysis introduces a nuance wholly absent here: how much agency delay is too much? But even when confronted with this nuance, courts in this Circuit have not hesitated to compel agency action under Section 706(1), or, indeed, to find that they were required to do so. *See Abdi*, 589 F. Supp. 2d at 121

---

[6] To Oxfam's knowledge, only the D.C. Circuit has held that courts may ignore a mandatory statutory deadline under some circumstances. *See In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). However, the D.C. Circuit, unlike other courts, including those in this Circuit, does not distinguish between "unlawfully withheld" (our case) and "unreasonably delayed" under Section 706(1). As a result, the D.C. Circuit applies a mode of analysis to missed statutory deadlines that one does not find any other courts applying -- and for good reason. While "unreasonably delayed" cases might require a more nuanced analysis of what constitutes "unreasonable," the statutory deadline cases are straightforward: violation of that deadline constitutes action "unlawfully withheld," and Section 706(1) requires a court to compel that action.

(granting plaintiff's motion for summary judgment and ordering agency to process plaintiff's immigration adjustment of status application within two months from date of order); *Tang*, 493 F. Supp. 2d at 150 (compelling agency to adjudicate plaintiff's application).

The SEC's failure is more obvious and absolute here. It had a deadline to pass final rules and it failed to do so. The case for an order compelling agency action is even more irrefutable here than it was in *Tang*. *See Forest Guardians*, 174 F.3d at 1190 ("when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion…If it withholds such timely action, a reviewing court must compel the action unlawfully withheld.").

### B. The Clearly Ordered Priorities of Dodd-Frank Require an Order Compelling the SEC to Act

Congress has made clear its order of priorities under Dodd-Frank. Whereas it made the promulgation of other Dodd-Frank rules discretionary, it has made the promulgation of Section 1504's disclosure rule mandatory. *See* CRS Report (Exhibit 5) at 12-16. Moreover, whereas Congress assigned some of the rules later deadlines or no deadlines at all, Congress has assigned a discrete and tight statutory deadline to Section 1504's rule. *See id.* at 12 and Appendix A (p. 58). It is difficult to envision a clearer statement of Congress's priorities. Section 706(1) of the APA exists to ensure that Congress's priorities are realized. *See Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 701-702 (S.D. Ill. 2004) ("Congress enacted the judicial enforcement provisions of the APA in part to provide a mandatory mechanism to enforce its own statutory commands.").

Compelling the SEC to promulgate the final disclosure rule required by Section 1504 is not only important to enforce Congress's intent with respect to *that* rule, it is imperative to enforcing Dodd-Frank as a whole. The rulemaking required to effectuate Dodd-Frank involves different agencies and coordinated action between those agencies. *See* Exhibit 5 at 7 and Appendices A-B. Because the success of Dodd-Frank depends on each rulemaking agency doing its part, the need for strict enforcement of the *earliest* rulemaking deadlines -- including the SEC's under Section 1504's -- is critical. *See Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1135 (N.D. Cal. 2007) (injunction compelling an initial plan and assessment granted because ultimate purposes of the Global Change Research Act could not be met until these step were taken).

## II. RESOURCE LIMITATIONS DO NOT EXCUSE THE SEC'S FAILURE TO MEET A STATUTORY DEADLINE

Almost every court to consider the issue has declined to excuse an agency's failure to meet a statutory deadline under any circumstances. *See supra* Part I.A. To do so here on real or alleged[7] resource limitations confronting the SEC would require breaking new ground *and* recognizing an excuse that the First Circuit has heretofore rejected.

The First Circuit does not recognize scarcity of agency resources as an excuse for agency inaction. Rather, it recognizes the unfairness of placing the burden of inadequate resources on plaintiffs whose statutory rights have been violated. Specifically, in *Caswell*, the First Circuit acknowledged the Department of Health, Education, and Welfare's backlog of cases. *See Caswell v. Califano*, 583 F.2d 9, 16 (1st Cir. 1978). The

---

[7] Resources have *not* prevented the SEC from promulgating other rules under Dodd-Frank, including rules that had statutory deadlines beyond April 17, 2011 or indeed no deadline at all. *See* SEC, *Listing Standards for Compensation Committees*, Release No. 33-9330 (final rule) (June 20, 2012); SEC, *Mine Safety Disclosure*, Release Nos. 33-9286, 34-66019 (final rule) (December 21, 2011).

Court recognized, therefore, that granting the plaintiff's request to compel agency action and end extensive delays in scheduling administrative hearings would have an "impact on the allocation of scarce resources" and ultimately could "adversely affect" other parties. *Id.* at 17. Nonetheless, the Court held that it could "hardly permit the legal rights of litigants to turn upon the alleged inability of the defendant fully to meet its obligations to others." *Id.*

Indeed, the Court observed that the "vindication of almost every legal right has an impact on the allocation of scarce resources." *Id.* The *Tang* Court likewise held that "it is not plaintiffs who ask the Court to take on the burden of remedying this crisis. Rather, it is the defendants who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the cost fall on [ ] plaintiffs." 493 F. Supp. 2d at 158. The Courts in both *Tang* and *Abdi* ordered an agency confronted with a high volume of applications and scare resources to adjudicate plaintiffs' applications.

This approach puts the First Circuit squarely with the Tenth Circuit in deciding requests under Section 706(1) of the APA. In *Forest Guardians*, the Tenth Circuit acknowledged the Fish and Wildlife Service's "practical predicament" resulting from resource limitations and a spending moratorium, and expressed "respect" for agency efforts to "prioritiz[e] duties in order to achieve the greatest conservation benefit for the greatest number of species." 174 F.3d at 1191-92. Nevertheless, the Court held that courts must compel agency action "without regard to [agencies'] other priorities" because it is not the court's role to second guess the deadline chosen by Congress. *Id.* at 1193. This echoes the statement made by the Court in *Tang* that courts are obligated to "follow the law and leave it for the political branches to fix the system." 593 F. Supp. 2d at 158.

Congress has determined that the SEC owes investors like Oxfam a rule requiring payment disclosure. Oxfam is entitled to an order compelling the SEC to fulfill its statutory duty.

## **CONCLUSION**

For the foregoing reasons, this Court should grant summary judgment in favor of Oxfam and issue an order requiring the SEC to adopt final rules implementing Section 1504 no later than thirty days from the issuance of summary judgment.

    Respectfully submitted,

    OXFAM AMERICA, INC.

    By its attorneys,

    /s/ Derek B. Domian
    _____
    Richard J. Rosensweig (BBO #639457)
    rrosensweig@goulstonstorrs.com
    Derek B. Domian (BBO #660568)
    ddomian@goulstonstorrs.com
    Goulston & Storrs, P.C.
    400 Atlantic Avenue
    Boston, MA 02110-3333
    T: (617) 482-1776
    F: (617) 574-4112

    Jonathan Kaufmann
    Richard L. Herz
    Marco Simons
    EarthRights International
    1612 K Street, NW, Suite 401
    Washington D.C. 20006

Dated: August 15, 2012

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

                                                /s/ Derek B. Domian